JUAN E. WESTER et al., Appellants, *v.* CASEIN COMPANY OF AMERICA, Respondent.

Contract — action for breach of contract — jurisdiction of court — when cause of action may arise in place other than that where contract is to be performed — repudiation of foreign contract by cablegram delivered to a telegraph company in this state for transmission to party in foreign state — legal effect of such act.

1. While the place where a cause of action for a breach of contract arises is generally the place where the contract is to be performed, an anticipatory breach of a contract which precedes the time prescribed for its performance, or at least the time when tender of performance has been proffered, is not necessarily confined to the place of performance named in the contract.

2. When one person by letter or telegram makes an offer to another and the other person accepts such offer, either by post or telegraph, the contract springs into existence at the time of such mailing or sending, because of implied authority in the carrier of the message to receive the reply.

3. Where a party wholly repudiates a contract the other party at his option is at liberty to rescind the whole contract and sue for the damages arising from a complete breach.

4. Where the place of performance of a contract between a nonresident and a foreign corporation was in a foreign country, but the breach by reason of which recovery is sought was by the delivery of a cablegram repudiating the contract to a telegraph company in this state for transmission to the other party in the country where it was to be performed, the courts of this state have jurisdiction over the cause of action. (Code Civ. Pro. § 1780.)

*Wester* v. *Casein Co. of America*, 140 App. Div. 442, reversed.

(Argued October 11, 1912; decided November 26, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 17, 1911, reversing a judgment in favor of plaintiff entered upon a verdict and dismissing the complaint solely upon a question of law, to wit, that the courts of the state of New York have no jurisdiction over the cause of action.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Peter B. Olney* for appellants.   A breach of the contract was committed by the defendant in the city of New York and a cause of action arose there by reason of such breach.   (*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367; *Riddle* v. *Bank of Montreal,* 145 App. Div. 211; *Bank of Montreal* v. *U. S. Banking Co.,* 129 App. Div. 906; *Pakas* v. *Hollingshead,* 184 N. Y. 211; *Hochster* v. *De La Tour,* 2 El. & B. 678; *Roehm* v. *Horst,* 178 U. S. 1.) Even if the plaintiffs must be held by their telegram to defendant in answer to defendant's telegram of November twenty-ninth to have elected to consider defendant's act a breach of the entire contract, still the cause of action arose in the state of New York.   (*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367; *Durham* v. *Spence,* L. R. [6 Ex. Cas.] 46; *Perry* v. *Erie Transfer Co.,* 28 Abb. [N. C.] 430; *Shelby Steel Tube Co.* v. *Burgess Gun Co.,* 8 App. Div. 444; *Howard* v. *Daly,* 61 N. Y. 362; *Windmuller* v. *Pope,* 107 N. Y. 674; *Nichols* v. *Scranton Steel Co.,* 137 N. Y. 471; *Pakas* v. *Hollingshead,* 184 N. Y. 211; *Rosenblatt* v. *Jersey Novelty Co.,* 45 Misc. Rep. 59; *Cherry* v. *Thompson,* L. R. [7 Q. B.] 73.)   The Appellate Division erred in holding that the plaintiffs accepted defendant's telegram of November twenty-ninth as a repudiation of the contract and acted thereon and in holding in effect that plaintiffs were bound by the charge of the trial judge that the breach occurred on the date of the telegram, inasmuch as they had not excepted to it and made no request to charge otherwise.   (*Leach* v. *Williams,* 12 App. Div. 173; *Vorce* v. *Oppenheim,* 37 App. Div. 69; *Whittaker* v. *D. & H. C. Co.,* 49 Hun, 400.)

*Charles J. Hardy, George J. Gillespie, Frederick P. Whitaker* and *William F. Delaney* for respondent.   The courts of this state have not jurisdiction of this action

under section 1780 of the Code of Civil Procedure. (*A. A. P. Co.* v. *Davis Provision Co.*, 191 U. S. 373; *Hopper* v. *Hopper*, 125 N. Y. 400; *Gundlin* v. *H. A. Packet Co.*, 8 Misc. Rep. 291; *Seisner Bros.* v. *Potter Produce Co.*, 23 Civ. Pro. Rep. 348; *Snow Church & Co.* v. *Snow Church Co.*, 80 App. Div. 40; *Duquesne Club* v. *Penn Bank*, 35 Hun, 390; *Morse* v. *Acme Cycle Co.*, 38 Misc. Rep. 817; *Smith* v. *Union Milk Co.*, 70 Hun, 348; 143 N. Y. 622; *Progressive, etc., Co.* v. *Iron Bridge Co.*, 14 Misc. Rep. 23; *Ervin* v. *Oregon Ry. & Nav. Co.*, 28 Hun, 269; *Brooks* v. *Mexican, etc., Co.*, 3 Civ. Pro. Rep. 36; *Adams* v. *Bank*, 35 Hun, 393.) Even if the failure to pay the draft in 1905 could be considered as the breach, the cause of action would not have arisen in the state of New York. (*Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y. 367; *Riddle* v. *Bank of Montreal*, 145 App. Div. 211; *Perry* v. *Erie Transfer Co.*, 28 Abb. [N. C.] 430; *Weyand* v. *Park Terrace Co.*, 202 N. Y. 231.)

CHASE, J. The plaintiffs are residents of the Argentine Republic. The defendant is a foreign corporation organized under the laws of the state of New Jersey, but having its principal place of business in the city of New York.

On April 30, 1904, at Buenos Ayres in said republic, the parties hereto entered into a contract which was written in Spanish, sealed with the seals of the government and duly stamped, by which the plaintiffs agreed for three years to sell to the defendant and the defendant to purchase from the plaintiffs their "total product of casein or that which they may in any way be in charge of or acquire whether within the Argentine Republic or in other countries of South America where they may operate" for the prices therein named.

The contract also provided: "Article 5. The casein shall be delivered F. O. B. at the port of Buenos Aires under telegraphic or written instructions as to the dates

of shipments, selection of vessels and destination which shall be given by the Casein Company of America sufficiently in advance; the Messieurs Wester and Company to be liable in no event for delays that may occur in shipments that are not chargeable to them for their fault or neglect.

" Article 9.  The Messieurs Wester and Company bind themselves to deliver to the Casein Company of America as the minimum quantity eight hundred tons of one thousand kilos each of casein per annum during the first year of this contract; a minimum of one thousand two hundred tons of one thousand kilos each during the second year; a minimum of one thousand six hundred tons of one thousand kilos each during the third year of the contract except when prevented by force majeure that may prevent the delivery of such amounts within the period stipulated.   *   *   *

" Article 10.  Payment for the casein delivered shall be made in the manner following: The Casein Company of America shall establish a sufficient and satisfactory bankers credit to Messieurs Wester and Company against which they shall have the right to draw at sight for the full amount of each shipment of casein accompanying their draft by shipping documents.

" Article 16. The Casein Company of America binds itself not to allow to accumulate at any of the warehouses of the Messieurs Wester and Company a quantity of casein greater than thirty thousand kilos without giving proper orders for shipment except when prevented by force majeure, that is to say, strikes in ports, lack of vessels to load, war in countries where casein is to be delivered and other causes beyond the control of the Casein Company of America.  If a greater quantity than thirty tons be allowed to accumulate (except for the reasons already set forth) the Messieurs Wester and Company shall be authorized to ship the excess to Liverpool to the order of the Casein Company of America

drawing for the amount thereof in the manner stipulated in Article 10 without further procedure, against which action the Casein Company of America shall have no remedy or claim."

This action is brought for an alleged breach of said contract. The jurisdiction of the courts of this state to maintain an action in favor of a non-resident against a foreign corporation is confined to the following cases: 1. Where the action is brought to recover damages for the breach of a contract, made within the state, or relating to property situated within the state, at the time of the making thereof. 2. Where it is brought to recover real property situated within the state, or a chattel, which is replevied within the state. 3. Where the cause of action arose within the state, except where the object of the action is to affect the title to real property situated without the state. (Code of Civil Procedure, § 1780.)

The jurisdiction of the courts of this state to maintain this action depends upon a determination of the question whether the breach of said contract occurred in this state.

The parties to the contract performed the same for several months, during which time the casein produced by the plaintiffs was delivered at Buenos Ayres, as provided by the contract, and it was paid for by the defendant.

On October 19, 1904, the defendant in New York cabled the plaintiffs in Buenos Ayres as follows: "Until further notice ship all casein to New York." There had apparently been some previous controversy between the parties about the casein, but what it was does not fully appear.

By a cablegram from plaintiffs at Buenos Ayres to the defendant at New York on November 26, 1904, it appears that there were further controversies relating to grinding the casein and to the credits at Buenos Ayres.

On November 28, 1904, the defendant replied to the plaintiffs as follows: "Cables incomprehensible. There

·is no obligation to take casein.  Contract provides you must offer.  We may decline or accept.  Complain of quality, not of grinding.  Have written."

It does not appear from this cablegram that either party had placed the other in technical default under the contract, but rather that deliveries and payments were delayed while the defendant was charging the plaintiffs with failure to furnish the quality of casein required by the contract, and the plaintiffs were complaining of the defendant's failure to provide the necessary credit to pay for casein ready for delivery, and that the differences remained undetermined and unadjusted.

On the same day, November 28, 1904, the plaintiffs replied to the defendant as follows: "Credit demanded is for 225 tons own make.  Answer immediately by Western Union Code.  Telegraph credit."  For the purpose of determining the legal effect of this cablegram and the reply thereto which we will hereinafter quote, it is necessary to consider the surrounding circumstances together with the rights of the parties when the last cablegram was sent.

On that day the plaintiffs had at Buenos Ayres 225 tons of casein ready for delivery and shipment to New York by the steamship *Pilar de Larrinaga.*  The defendant's inspector had inspected the casein and delivered to the plaintiffs a certificate of quality.  The rights of the parties were in controversy.  Each was dissatisfied with the performance of the other.  The contract was undoubtedly by its terms to be performed in Argentina, but there was nothing to prevent the parties agreeing upon a modification of the contract by which the casein should be delivered and paid for in New York.  Either party could have insisted upon performance of the contract according to its terms.  Up to that time neither party had insisted upon placing the other in technical default.  It was unnecessary under the terms of the contract for the defendant to refuse the casein until it was formally ten-

dered. Its position as announced in its cablegram of November 28 was that it was under no obligation to take the casein. It must have meant to claim that the casein proposed for delivery did not meet the requirements of the contract. It even suggested that under the terms of the contract plaintiffs must formally offer or tender the casein, and asserted that it could then decline or accept. The plaintiffs did not rely upon the letter of the contract and formally proffer delivery in Buenos Ayres, but allowed the casein to accumulate, while cablegrams and letters were passing between them relating to the quality of the casein and also to the bankers' credit. While such was the position of the parties, and while a technical default was not asserted or claimed, and while either party was at liberty to insist upon performance in Argentina, the last-mentioned cablegram was sent. By it plaintiffs sought to put an end to the controversy. It was a demand upon the defendant for credit pursuant to the contract. It in any event sought a reply, and it made the telegraph company, which was the means of communication chosen by them, their agent to receive it. The defendant, although fully aware, as we have seen, that it was for the plaintiffs to tender the casein in Buenos Ayres, and that it was simply for it to then decline or accept, did not stand upon its contract rights, but on November 29, 1904, delivered to a telegraph company for transmission to the plaintiffs the following cablegram: "Must insist upon inspection, and payment destination." Such cablegram was an unqualified repudiation of the contract, and its legal effect is the same as if the parties being personally present in New York the plaintiffs had verbally used in speaking to the defendant the words of the cablegram of the 28th, and the defendant had replied in the words of its cablegram of the 29th.

On November 30, 1904, the plaintiffs cabled defendant as follows: "Cannot accept under any conditions inspection and payment destination, shall commence action for

breach of contract if credit is not extended immediately, impossible to wait; shall sell for account of whom it may concern."

This cablegram did not change the situation in the least, except that it left open for a reasonable time to the defendant an opportunity to provide the necessary credit and accept at Buenos Ayres the casein then ready for delivery. The defendant did not accept such option, nor did it in any way modify its complete repudiation of the terms of the contract as shown in the cablegram so delivered to the telegraph company.

The plaintiffs did not forward the 225 tons of casein by the steamship *Pilar de Larrinaga*, but stored it.

It is quite unnecessary, for the purposes of this opinion, to quote the subsequent correspondence between the parties or to state what thereafter occurred between them. This action was commenced March 28, 1906.

It must be assumed, as we have shown from the cablegrams in evidence, that by acquiescence of the parties and because of the controversy existing between them there had not, up to the delivery of the cablegram to the telegraph company on November 29, been a technical breach of the contract.

We are of the opinion as we have stated that the delivery of the cablegram to the telegraph company should be treated as a delivery to the plaintiffs. It is deemed to be a delivery to the plaintiffs whether received by them or not, for the same reason that when one person by letter or telegram makes an offer to another and the other person accepts such offer, either by post or telegraph, the contract springs into existence at the time of such mailing or sending, because of implied authority in the carrier of the message to receive the reply. (*Vassar* v. *Camp*, 11 N. Y. 441; *Trevor* v. *Wood*, 36 N. Y. 307; *Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608.)

The breach of the contract occurred in this case upon the delivery of the cablegram to the telegraph company,

and constituted a breach not only at that time but also at that place.   It was unnecessary for the defendant to have anticipated the action it would take in case of formal tender in Buenos Ayres.   It did, however, anticipate such action by its cablegram of November 29.

An anticipatory breach of a contract precedes the time prescribed for its performance, or at least the time when tender of performance has been proffered.   If it does not precede the time of performance or actual tender it is not anticipatory.   Where, as in this case, it precedes a formal tender under the contract and is in anticipation of such tender, it is as voluntary and its effect is the same as when it precedes the time when performance is required in whole or in part by the contract.

The defendant having voluntarily anticipated its action and repudiated the contract it should be treated the same, so far as the breach is concerned, as it would if the plaintiffs had in New York tendered the casein to the defendant, and the defendant had then waived the place of delivery, but wholly refused to accept it, and wholly repudiated the contract.   It would in that case have been a breach of the contract in New York, although the place of performance as provided by the contract was Argentina.

The place where a cause of action for a breach of contract arises is generally — almost universally — the place where the contract is to be performed.   The reason why the place of the breach of contract is generally the place of its performance is that unless the place of performance is waived or performance is anticipated it is only at such place that there is a breach or that it can be determined whether there is a breach.

An anticipatory breach of contract is not necessarily confined to the place of performance named in the contract.   It depends upon the facts and circumstances in each case.   In determining the place of the breach the time of the breach is important.   (*Hamilton* v. *Barr*, 18 L. R. Ir. 297; *Mathews* v. *Alexander*, Ir. R. [7 C. L.] 575;

*Cherry* v. *Thompson,* L. R. [7 Q. B.] 573.) Although the doctrine of an anticipatory breach is not applicable in all cases (see *Kelly* v. *Security Mut. L. Ins. Co.,* 186 N. Y. 16), it is applicable to the case now under consideration.

In *Hibernia National Bank* v. *Lacombe* (84 N. Y. 367) this court, in considering the place where a cause of action arose, and quoting from *Durham* v. *Spence* (L. R. [6 Ex.] 46), say (p. 383): "'I understand by cause of action that which creates the necessity for bringing the action. No doubt to make the act or omission complained of a cause of action, a contract must have preceded; but so also a negotiation must have preceded the making of the contract. Yet, I should not include that negotiation, nor any of the other circumstances that might form part of the necessary evidence in the cause, as the ground work of the cause of complaint, but only the cause of complaint itself, that is the breach;' * * * 'The cause of action must have reference to some time as well as some place. Does then the consideration of the time when the cause of action arises give us any assistance in determining the place where it arises? I think it does. The cause of action arises when that is not done which ought to have been done; or that is done which ought not to have been done. But the time when the cause of action arises determines, also, the place where it arises, for when that occurs which is the cause of action the place where it occurs is the place where the cause of action arises.'"

If the defendant wholly repudiated the contract the plaintiffs were at liberty, at least at their option, to rescind the whole contract and sue for the damages arising from a complete breach. (*Wolfert* v. *Caledonia Springs Ice Co.,* 195 N. Y. 118; *Pakas* v. *Hollingshead,* 184 N. Y. 211; *Pope* v. *Porter,* 102 N. Y. 366; *Ga Nun* v. *Palmer,* 202 N. Y. 483; *Roehm* v. *Horst,* 178 U. S. 1.)

The defendant, which has its principal place of business in this state, should not feel aggrieved if the plaintiffs, in reliance upon its cablegram, are enabled to sustain the

jurisdiction of the courts of this state and thus come to the place of the defendant's convenience to fight its and their battle.

The judgment of the Appellate Division should be reversed, with costs to appellant, and the case remitted to that court for consideration and determination of the questions involved on the appeal to it other than the question of the jurisdiction of the courts of this state.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur; HAIGHT, J., absent.

Judgment reversed, etc.