JOHN F. PLUNKETT and Others, Copartners Doing Business under the Firm Name and Style of PLUNKETT-WEBSTER LUMBER COMPANY, Plaintiffs, *v.* THE COMSTOCK, CHENEY COMPANY, Defendant.

First Department, February 6, 1925.

Sales — anticipatory breach by buyer — action by sellers to recover damages — after date of delivery had been indefinitely deferred sellers demanded that goods be received — buyer refused to accept goods according to demand — said refusal was anticipatory breach and gave sellers right of action — refusal to accept delivery as demanded by sellers was repudiation by buyer — repudiation prevents buyer from asserting that it was not in default — sellers not required to prove readiness — sellers may sue for profits — notice by sellers that contract would be treated " as rescinded " did not prevent suit for breach — verdict not excessive for failure to deduct freight charges.

An anticipatory breach of a contract for the sale of goods occurs where it appears that sometime after the date of delivery had been indefinitely deferred by

mutual agreement, the sellers demanded that the buyer accept delivery but the buyer refused to accept the goods according to the demand.

The refusal of the buyer to accept delivery in accordance with the demand by the sellers, which they were justified in making, constituted a repudiation of the contract, was an anticipatory breach thereof and gave the sellers the right immediately to sue for breach of the contract.

The repudiation of the contract by the buyer prevents it from asserting that it was not in default at the time the demand was made by the sellers that the buyer accept delivery or at any other time.

The sellers were not required to prove their readiness and ability to perform the contract as to the goods remaining undelivered, since the defendant repudiated the contract.

The sellers had the right to treat the refusal of the buyer as an abandonment of the contract and sue for the profits which might have been made if the contract had been performed.

The notice by the sellers, following their demand that the buyer accept the goods, that they would treat the contract " as rescinded " does not show that they intended to regard the contract as absolutely ended for all purposes, but the clear intent of the notice read in its entirety is that the sellers regarded the contract as alive for the purpose of an action for damages for anticipatory breach.

The verdict was not excessive in that it failed to allow the buyer the amount of freight charges from the point of shipment to the point of destination, since the contract called for deliveries f. o. b. point of shipment and all the testimony relating to the market prices was based upon prices at the point of shipment.

MOTION by the defendant, The Comstock, Cheney Company, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the direction of a verdict in favor of the plaintiffs at the close of the case upon a trial before the court and a jury at the New York Trial Term in April, 1924.

*Greene & Hurd* [*George F. Hurd* of counsel; *Daniel S. Murphy* and *George L. Hubbell, Jr.*, with him on the brief], for the plaintiffs.

*Spencer, Ordway & Wierum* [*Otto C. Wierum* of counsel], for the defendant.

McAvoy, J.:

There are two causes of action alleged on two contracts for the sale of specially selected maple and basswood lumber by plaintiffs to defendant. The making of the contracts is admitted. A portion of the lumber specified in each contract was delivered by plaintiffs and paid for by defendant during the year 1920, which was the time specified for delivery under the contracts. It is admitted that at defendant's special instance and request plaintiffs withheld tender and delivery of the lumber remaining undelivered up to and including the 12th day of December, 1921. The breach alleged is that on or about December 12, 1921, the defendant notified plaintiffs that it would not accept and pay for the balance

of the lumber remaining undelivered and thereby repudiated the contracts. Following the defendant's repudiation, plaintiffs on January 10, 1922, notified defendant by letter that they elected to treat the defendant's repudiation as a breach of the contracts and that plaintiffs would hold defendant for the damages suffered by them by reason of defendant's refusal to accept and pay for the lumber. Defendant offered no testimony at the trial, but rested after the close of plaintiffs' case. Both sides moved for the direction of a verdict and a verdict was directed for plaintiffs for the full amount demanded. The defendant contends on this appeal that plaintiffs failed to make out a *prima facie* case based upon the claim that defendant's conduct did not amount to a repudiation of the contracts.

In February, 1921, plaintiffs were urging defendant to permit the shipment of at least two or three carloads of the lumber remaining undelivered. In May of that year plaintiffs urged that defendant permit the shipment of a car or two. In September plaintiffs wrote: "We have, however, arrived at the point where we feel we must ship a few cars of this on account of our need of funds." In October plaintiffs wrote, "We have now deferred shipment of your order for nearly twelve months' time, and we have nearly reached the point where much as we dislike to, we must ask you for some relief," and requested that defendant advise plaintiffs when defendant's president, Mr. Robert Comstock, would be in New York in order that a meeting might be arranged to discuss the matter.

On November 11, 1921, defendant replied that its president might be in New York in the next two or three weeks, but "if it is in regard to taking any lumber, we would say that we are not in a position, and do not intend to take in any lumber this year and probably not until next Fall."

On December 7, 1921, plaintiffs replied: "We are compelled to say that your suggestion that you do not intend to take in any lumber during 1921, and probably not until next Fall, is not at all satisfactory to us, and we cannot accede to or accept such a proposal. * * * We have now reached a point where we must have a definite understanding with you covering deliveries of the balance of our contracts within the very near future or some other plan by which we can be relieved of further carrying the burden and further loss."

Defendant replied making an appointment for its president, Mr. Comstock, to meet Mr. Webster, one of the plaintiffs, in New York on December 12, 1921. At this meeting, the conversation which was had resulted in a declaration by defendant's

representative that defendant could not possibly take more than two carloads of the maple. Thereafter no communications were had between the parties excepting the plaintiffs' letter to defendant under date of January 10, 1922, which, omitting the formal parts, reads as follows: " Referring to your letter of November 11th and the position which you take in that letter, namely, that you do not intend to accept delivery until next fall of the balance of lumber due you under our contracts and orders with you, and to the confirmation of your position as above outlined recently given to our Mr. Ora S. Webster in conference with your Mr. Comstock, we are compelled to treat this action on your part as a breach of our contracts and orders with you. Accordingly, we hereby notify you of our election to consider these contracts and orders as rescinded, and to hold you for the damages sustained by us by reason of your refusal to accept and pay for the lumber." No reply was ever made to this letter.

We think that it was properly determined that defendant's repudiation of the contracts was an anticipatory breach thereof giving rise to an immediate cause of action in favor of plaintiffs.

The plaintiffs in this case have adopted a remedy authorized by the rule announced in *Henderson Tire & Rubber Co.* v. *Wilson & Son* (235 N. Y. 489). The letter of January 10, 1922, shows that they treated defendant's refusal as an abandonment and complete breach of the contracts.

It is urged by defendant that there was no breach of the contracts by it, asserting that there was no positive and unequivocal repudiation of its duty under the contract, and that the defendant as a matter of law was not in default on December twelfth, or at any other time, for the reason that the original time for performance was waived and that no other time was ever fixed by notice or otherwise.

Defendant also claims that it never at any time actually repudiated the contracts and as evidence of this relies upon the statement in its letter of November 11, 1921, to the effect that it did not intend to take any lumber during that year and probably not until next fall.

At the conversation had between the parties' representatives, heretofore mentioned, a demand by Mr. Webster that defendant make up a schedule of deliveries was made. In response to this the defendant's president said: " We can't do that. We cannot possibly take more than two cars of maple." This was an unequivocal repudiation.

It is also asserted by defendant that there was no breach of the contracts by it because the defendant as a matter of law was

not in default either on December 12, 1921, or at any other time for the reason that the original time for the performance was waived and that no other time was ever fixed by notice or otherwise.

This would be a real point if there was no repudiation by the party against whom the default was claimed and if there had been no demand for performance or objection to the delay by the party bringing the action.

In *Taylor* v. *Goelet* (208 N. Y. 253, 259) the contention that, the time for performance having been waived, a notice fixing a time for performance is required was overruled in a like instance, the court saying: " It is to be understood, however, that the notice of intention to rescind is only necessary when the party to the contract proceeded against has merely delayed performance, not where he has abandoned the contract, or treated it as terminated, or where he has refused to perform."

A further argument is based upon the rule that as payment and delivery under the contract were to be concurrent acts, the plaintiffs were required to prove their readiness and ability to perform as to the lumber remaining undelivered.

If plaintiffs had elected to disregard defendant's repudiation and to keep the contracts alive for the benefit of both parties, it would have been necessary for them to make a tender, or if a tender were waived when deliveries became due, to show readiness and willingness to make a tender.

But the breach here being an anticipatory one, plaintiffs were never under any obligation to place themselves in a position of readiness or ability to perform. (*Henderson Tire & Rubber Co.* v. *Wilson & Son*, 235 N. Y. 489; *Estes* v. *Curtiss Aeroplane & Motor Corporation*, 191 App. Div. 719; affd., without opinion, 232 N. Y. 572.)

The plaintiffs can treat the refusal of the other party as an abandonment of the contract and sue for the profits which might have been made had the contract been performed.

The plaintiffs in this case have adopted that remedy. It was, therefore, unnecessary for them to make any preparations for further performance.

If the vendor has to buy instead of to manufacture, he may show what was the value of the contract by showing for what price he could have made subcontracts, just as the cost of manufacture in the case of a manufacturer may be shown.

Defendant's contention that notwithstanding the context of plaintiffs' letter of January 10, 1922, shows that plaintiffs were asserting their right to damages against the defendant for its anticipatory breach of the contract, a strict and technical meaning

should be given to the words " as rescinded " as indicating that plaintiffs intended to regard the contracts as absolutely ended for all purposes cannot be upheld. A mere reading of the letter will demonstrate beyond question that plaintiffs in using the words " as rescinded " did not intend to treat the contracts as absolutely ended for all purposes, but, on the contrary, intended to continue them for the purpose of an action for damages thereon against the defendant.

The Court of Appeals has frequently used the words " rescind " " rescinded " and " rescission " in connection with an anticipatory breach as expressive of the election to treat the repudiation as a complete breach of the contract which would give rise to an immediate right of action for damages. (*Wester* v. *Casein Co. of America*, 206 N. Y. 506; *Rubber Trading Co.* v. *Manhattan Rubber Manufacturing Co.*, 221 id. 120; *Estes* v. *Curtiss Aeroplane & Motor Corp.*, 191 App. Div. 719; affd., without opinion, 232 N. Y. 572.)

Judge CHASE in the opinion of the court in *Wester* v. *Casein Co. of America* (*supra*, at p. 515) uses this term as indicating an intention to treat the contract as broken. He says: " If the defendant wholly repudiated the contract the plaintiffs were at liberty, at least at their option, to rescind the whole contract and sue for the damages arising from a complete breach."

The context of the letter of January 10, 1922, shows that the words " as rescinded " were used by plaintiffs in the same sense as the words " to rescind " were used invariably in opinions ruling in like conditions in appellate courts.

Defendant claims that the verdict is excessive and that it should be reduced by the amount of $5,000. This claim is based on the testimony that the amount of freight on the lumber remaining undelivered would be between $5,000 and $6,000. The contract, however, calls for deliveries f. o. b. Ivoryton or Essex, Conn. All of the testimony as to market prices was based upon prices of the lumber f. o. b. Ivoryton or Essex, Conn.

The amount of the verdict in favor of the plaintiffs represents the difference between the contract price and the market price of the lumber f. o. b. Ivoryton or Essex, Conn. The plaintiffs are entitled to recover that amount which represents the measure of damages in this case. Since both the contract price and the market price are based upon prices f. o. b. Ivoryton or Essex, Conn., the question of freight cannot be considered in the admeasurement of damage. The plaintiffs are entitled to the full amount of the recovery and the verdict should not be disturbed.

The exceptions should be overruled and judgment should be

directed for plaintiffs for the amount of the verdict, $29,929.21, with interest from the date thereof, April 17, 1924, together with costs in this court and at Trial Term.

Clarke, P. J., Merrell, Finch and Martin, JJ., concur.

Exceptions overruled and judgment directed for plaintiffs for the amount of verdict, with interest thereon from date of verdict, and with costs in this court and at Trial Term. Settle order on notice.