# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 30
Audthan LLC,
    Appellant-Respondent,
     v.
Nick & Duke, LLC,
    Respondent-Appellant.

Elan R. Dobbs, for appellant-respondent.
Jeffrey Turkel, for respondent-appellant.

WILSON, Chief Judge:

Nick & Duke, LLC (N&D) owns 182-188 Eleventh Avenue in Manhattan. The property includes a Single Room Occupancy (SRO) hotel occupied by some rent-stabilized tenants. Audthan LLC is a real estate developer. In 2013, N&D and Audthan entered into an agreement to replace the SRO with a mixed-used residential and commercial building for a 40-year lease term. Both parties understood that an approval of a "cure" agreement with the New York City Department of Housing Preservation and Development (HPD)

- 1 -

would be required for the project to go forward and incorporated terms relating to that approval into the agreement. This is where things fell apart. Both parties agree that the ground lease has been terminated, but disagree as to whose fault it was, when the termination occurred, and what damages, if any, are available to whom.

Although the litigation is nearly a decade old, this case comes to us on Audthan's appeal and N&D's cross-appeal from the Appellate Division's affirmance of Supreme Court's order dismissing parts of the first and third causes of action of Audthan's third amended complaint and rejection of N&D's motion to dismiss the remaining portions of that complaint.[1] We now hold that the portion of the first cause of action seeking to recover damages for breach of contract on the theory of repudiation was erroneously dismissed. To the extent preserved, N&D's arguments do not entitle it to dismissal of the complaint at the pleading stage, except, as the lower courts held, as to its claim for attorneys' fees in count three.

I.

In May 2013, N&D and Audthan entered into a 40-year term lease with an option to renew at Audthan's sole discretion for another 48 years. Audthan undertook to construct a 58,000 square foot luxury residential and commercial property that would revert to N&D

---

[1] At the pleading stage, we take all allegations in the complaint as true for the purpose of this appeal, and also rely on documents attached to or referenced in the complaint (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Rovello v Orofino Realty Co., Inc.*, 40 NY2d 633, 635 [1976]).

at the end of the lease term.  Pursuant to a 2009 finding of harassment from a prior lessee, HPD imposed a restrictive declaration on the property site barring any further development or the issuance of any building permits unless and until N&D cured the harassment finding by, among other things, creating 15,000 permanent square feet of low-income housing on the site.[2]

The harassment cure was specified in the ground lease between N&D and Audthan. Section 14.01 of the lease required Audthan to obtain a cure agreement from HPD for the harassment finding and to develop the 15,000 square feet of low-income housing HPD required.  Because no building permit could issue until a cure agreement with HPD was signed, the lease obligated N&D to cooperate with Audthan "in good faith" at Audthan's expense "in executing any agreements, certifications, filings or similar documents as are consistent with the provisions of th[e] Lease or otherwise reasonably acceptable to [N&D] in order to effectuate the HPD Cure."

The lease contemplated that Audthan would develop a building divided into three separate condominiums: one would contain the 15,000 square feet of low-income housing units and be deeded to a non-profit that would operate and take legal title to the permanent low-income housing on the property necessary for a cure; and Audthan would retain physical possession of the two remaining condominiums until the lease term ended, at

---

[2] Section 93-90 (d) of the New York City Zoning Resolution similarly provides that where there is an existing harassment finding on a property located in the Special West Chelsea District (applicable here), that property cannot be developed until the harassment is "cured."

which point N&D would regain possession of those, but not the space allocated to the low-income housing units.

Additionally, both parties agreed to the following provision found in section 33.09 of the lease:

> "Whenever Lessor's or Lessee's consent or approval is required under the terms of this Ground Lease, such consent or approval shall not be unreasonably withheld, conditioned, or delayed unless otherwise specified herein. Each of Lessor and Lessee hereby waives to the fullest extent permitted by law any right to damages (actual, incidental or consequential) based upon either party's actual or allegedly wrongful withholding, conditioning or delaying any consent or approval under or in connection with this Ground Lease. Such party's sole remedy for any wrongfully withheld, conditioned or delayed consent or approval shall be the right to seek injunctive relief."

In 2015, while Audthan was negotiating a cure agreement with HPD, it had taken over possession of the subject property, including the SRO, and was renting residences at the SRO hotel to new occupants. During that time, some of the SRO occupants to whom Audthan rented residences brought wrongful eviction cases against Audthan pursuant to Rent Stabilization Code (RSC) §§ 2520.6 (j) and 2522.5 (a) (2).[3] In four adjudicated cases, Audthan was found to have wrongfully evicted tenants from the SRO hotel.[4] As a result of those adjudications, the tenants were granted rent-stabilized status.

---

[3] RSC § 2520.6 (j) states that an SRO occupant can become a rent-stabilized tenant by requesting "a lease of six months or more pursuant to section 2522.5 (a) (2) of this Title." Section 2522.5 (a) (2) provides that an SRO occupant can also become a rent-stabilized tenant by requesting a lease "at any time during [their] occupancy."

[4] In *Guira v Audthan LLC* (48 Misc 3d 1217 [A] [Civ Ct, NY County 2015]), the court found Audthan had unlawfully evicted the tenant, noting Audthan's actions were "geared to evading their obligations under the Rent Stabilization Code." In *Ouattara v Audthan*

In December 2015, Audthan and HPD finalized a proposed cure agreement (PCA). HPD notified the parties that it had approved the PCA but would not execute it until the agreement received N&D's signature. The PCA stated that Audthan would gut renovate the SRO hotel to provide the low-income housing required to effectuate the cure and allow Audthan to develop the property. The PCA allocated 14,825 square feet to low-income housing to adhere to the lease provisions and stated that the square footage was "exclusive of the so-called Non-Relocating Units." The "Non-Relocating Units" were four occupied rent-stabilized units in the SRO hotel that would not count towards the low-income housing requirement. The four occupied rent-stabilized units allocated in the PCA were not the same four units that the courts had created because of Audthan's unlawful actions.[5]

---

*LLC* (49 Misc 3d 1206 [a] [Civ Ct, NY County 2015]), the tenant sued Audthan to be restored as a permanent rent-stabilized tenant. Audthan responded by suing the tenant and the Division of Housing and Community Renewal for a declaration that RSC §§ 2520.6 (j) and 2522.5 (a) (2) were unconstitutional (*Audthan LLC et al v Ouattara et al*, Sup Ct NY County, Index No.: 159096/2015). The court determined that Audthan had unlawfully locked out the tenant, concluding that Audthan's actions "appear[] to be geared to evading their obligations under the Rent Stabilization Code" through policies they implemented to prevent "individuals from becoming permanent tenants and limiting occupancy to transients" (*Ouattara*, 49 Misc 3d at *4). In *Ahmed v Chelsea Highline Hotel* (49 Misc 3d 139 [A] [App Term, 1st Dept 2015]), the Appellate Term held that the tenant had been forcibly removed and because he had a possessory interest in the premises, he could not be ousted without legal process. Finally, in *Cabelis v Audthan LLC*, L&T Index No. 76374/15, a tenant sued Audthan for illegally locking him out. The court held that Audthan violated RSC § 2522.5 (a) (2) and ordered Audthan to return the apartment to the tenant.

[5] Although the court reinstated tenancy in units 2C, 2D, 3C, and 4A, designating them as rent-stabilized units, Exhibit D of the PCA, which was supplied by Audthan, identified the Non-Relocating Units as 3A, 3E1, 4C, and 4E. It also listed the court-ordered stabilized units as vacant. Neither the PCA nor its addenda mentioned Audthan's four wrongful eviction adjudications.

Audthan sent the PCA to N&D to sign on December 23, 2015, and again on February 9, 2016. N&D did not sign it. In response, Audthan contended that N&D was in breach of its obligations under the lease. In March 2016, Audthan moved for an injunction compelling N&D to approve the PCA. N&D opposed the motion, refusing to approve the PCA because it did not account for the court adjudicated stabilized units. N&D argued that because the footage of the four court-adjudicated units would not count toward the 14,825 square feet of designated low-income housing and were also permanent, non-relocating units, the building would be forced to contain more than the "approximately" 15,000 square feet of low-income housing provided for in the lease. N&D complained that to include four more non-relocating units in addition to the 14,825 square feet designated by the PCA, Audthan would need to shift footage away from the luxury portion of the building that N&D stood to inherit. In 2017, Supreme Court denied Audthan's motion for immediate injunctive relief, holding there were issues of fact as to whether N&D was justified in refusing to execute the PCA and whether a revised cure agreement was required.

As the litigation progressed, N&D purported to terminate the lease at least four times: in July 2015 (shortly after Audthan commenced this action); in June 2016 (shortly after Audthan moved to compel N&D to sign the December 2015 PCA); in October 2017 (the day after Audthan sought an order compelling N&D to return its security deposit to a segregated account); and in February 2020 (following Supreme Court's denial of N&D's request to stay its time to complete discovery). Each of N&D's attempted terminations resulted in the issuance of a *Yellowstone* injunction prohibiting N&D from terminating the ground lease.

On April 28, 2021, N&D sent HPD a letter notifying it of the four 2015 adjudications against Audthan and asked HPD to revoke the PCA or acknowledge that HPD proposed to grant Audthan's cure application notwithstanding those adjudications. HPD responded that because no approved agreement existed, there was nothing for it to rescind. N&D wrote HPD on May 11, 2021, stating that CPLR 7803 (1) required HPD to render a decision on the PCA. HPD responded, "once the lessor and the lessee are prepared to execute the proposed Cure Agreement, HPD will review the proposed Cure Agreement (including allegations set forth in your letters) to determine if the proposed Cure Agreement is still warranted. . . . [and] if the proposed Cure Agreement should be adopted, should be modified or should be denied." On June 4, 2021, N&D responded to HPD that in direct contradiction of its May 27th correspondence, several years earlier HPD had said its review was complete and the PCA was approved. The letter also stated the following:

> "[N&D] will not, and will never, approve any version of a PCA, because no cure is warranted in light of adjudicated harassment of tenants by . . . Audthan . . . .[N&D] will not be put in a position whereby [N&D] must commit to sign the PCA before HPD determines whether 'the Cure Agreement is still warranted.' In light of the information already provided to HPD, we suggest that HPD should simply issue an order of denial and revoke the draft PCA."

N&D's letter further stated that if N&D did not receive a final determination on the Cure Application by June 21st, it would commence a mandamus proceeding. On July 26, 2021, Audthan notified N&D that it was interpreting N&D's June 4th letter as repudiating the lease, and shortly thereafter Audthan surrendered the premises.

Subsequently, Audthan amended its complaint to withdraw its original request for injunctive relief and add new claims. Audthan's third amended complaint, now before us,

contains five causes of action. The first cause of action is for breach of contract, based on N&D's alleged breaches in 2015 for refusing to sign the PCA, and on an anticipatory repudiation theory based on N&D's June 4, 2021, statement that it "will never" approve any cure agreement. The second cause of action is for a breach of the covenant of quiet enjoyment, based on two different set of facts: (a) N&D's refusal to the sign the cure agreement; and (b) the several lease termination notices N&D sent from 2015 to 2020, which forced Audthan to incur legal expenses in obtaining *Yellowstone* injunctions and otherwise responding to those termination notices. The third cause of action is for breach of contract and has three subparts: (a) a breach of the implied covenant of good faith and fair dealing that otherwise duplicates count two; (b) a claim for attorneys' fees related to fighting the notices of termination; and (c) a claim for the additional rent Audthan paid under protest, which it alleges was not due under the contract. The fourth cause of action is for a preliminary and permanent injunction barring N&D from applying Audthan's security deposit as an offset against unpaid rents or any other claim N&D might have. Finally, the fifth cause of action is for the dissolution of the $518,000 undertakings that were posted in connection with the *Yellowstone* injunctions.

N&D moved to dismiss the complaint pursuant to CPLR §§ 3211 (a) (1), 3211 (a) (5), and 3211 (a) (7) and for entry of a money judgment against Audthan for outstanding use and occupancy and other charges.

## II.

Supreme Court granted N&D's motion to dismiss the first cause of action to the extent based on anticipatory repudiation and on the third cause of action to the extent it seeks attorneys' fees. The court reasoned that Audthan could not assert an anticipatory breach for the same conduct as an actual breach and that Audthan was not entitled to damages for legal fees expended in connection with this litigation. The court otherwise denied N&D's motion. Both parties appealed.

The Appellate Division affirmed in a 3-2 decision. It held that Audthan could not "seek separate redress on a theory of repudiation for the breach of a contract cause of action" (*Audthan LLC v Nick & Duke, LLC*, 211 AD3d 419, 420 [1st Dept 2022]). Because Audthan's theory of repudiation is predicated on N&D's June 4th letter, the court reasoned that the letter, when "read in its entirety," states the same reasons N&D refused to sign the PCA in 2015—its failure to account for Audthan's "ongoing harassment of tenants and the rent-stabilized tenancies newly created" after Audthan submitted its application to cure the 2009 harassment finding (*id.* at 420-421). According to the Appellate Division, N&D's June 4th statement that it would "absolutely refuse to sign 'any' cure agreement [was] merely an extension of the same breach alleged in 2015" (*id.* at 421). The court concluded that if N&D was not found to have breached the lease in 2015, "then its actions in 2021 do not constitute a separate breach of the lease, much less a repudiation. Moreover, because a party cannot repudiate a contract it has already breached, if [N&D] is found to have breached the lease in 2015, there can be no repudiation in 2021" (*id.*).

The two dissenting Justices concluded that Audthan sufficiently pleaded anticipatory breach because "where an obligation is ongoing or serial in nature, a

*subsequent* material breach can support a claim on a theory of repudiation notwithstanding earlier claims for partial breach" (*id.* at 422 [Rodriguez, J., dissenting in part]).  The dissent viewed N&D's "unequivocal statement in 2021" as sufficiently "different in kind from the earlier alleged conduct" such that it establishes a "separate material breach of the obligations under section 14.01" of the ground lease (*id.* at 423).  The dissent reasoned that because Audthan procured several *Yellowstone* injunctions throughout the course of this action, it clearly "elected, upon the earlier alleged breaches, to keep the contract in force, declare the default[s] only [ ] partial breach[es], and recover th[e] damages caused by th[ose] partial breach[es]", which permitted Audthan to "treat any subsequent material breach as a repudiation of the contract" (*id.* [internal quotation marks and citations omitted]).  Finally, the dissent emphasized the current procedural posture and claimed the majority's interpretation of the June 4th letter was a "premature" finding of fact, in which the majority also conflated the 2015 and 2021 allegations (*id.* at 424-425).

As to the remaining claims, the Appellate Division was unanimous.  For the remaining breach of contract claim in the first cause of action, the court held that section 33.09 of the ground lease "does not foreclose [Audthan] from seeking monetary damages for [N&D's] refusal to enter into a cure agreement with HPD" (*id.* at 421).  Citing *Kalisch-Jarcho, Inc. v City of New York* (58 NY2d 377, 384-385 [1983]), the court reasoned that although section 33.09 states that Audthan's remedy is "limited to injunctive relief, the third amended complaint adequately alleges bad faith conduct that, if established, could overcome section 33.09's limitation on damages" (*Audthan LLC*, 211 AD3d at 421).

Accordingly, the court held that Audthan sufficiently pleaded that claim and denied N&D's motion to dismiss.

For the second cause of action seeking damages for breach of the covenant of quiet enjoyment, the Appellate Division affirmed Supreme Court's ruling on the same rationale (*id.*). The court found Audthan's claim was sufficiently supported by two separate allegations: (a) N&D's refusal to execute the PCA denied Audthan the beneficial use of the premises and it was obliged to vacate; and (b) Audthan's allegation that N&D issued "serial termination notices, which required [Audthan] to seek four *Yellowstone* injunctions over the course of seven years of litigation" (*id.*).

As to the third cause of action, the court affirmed Supreme Court's dismissal as to the attorneys' fees but found Audthan otherwise sufficiently stated a claim. The court agreed that Audthan had no basis for seeking attorneys' fees as damages for the termination notices that N&D allegedly served in bad faith "since no agreement, court rule, or statute allows recovery of attorneys' fees in this circumstance" (*id.* at 422). The court found Audthan sufficiently alleged its fourth and fifth causes of action on the same reasoning as Supreme Court.

Both parties cross-moved for leave to appeal to this Court. The Appellate Division granted both motions and certified the following question: "Was the order of this Court, which affirmed the order of Supreme Court, properly made?" We now answer in the negative solely as to the dismissal of Audthan's cause of action for breach of contract seeking to recover on a theory of repudiation. We otherwise affirm.

III.

On a motion to dismiss a complaint under CPLR 3211, "we must liberally construe the pleading and 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Company, Inc.*, 37 NY3d 169, 175 [2021], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Roni LLC v Arfa*, 18 NY3d 846, quoting *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005] ["On a CPLR 3211 motion to dismiss . . . the question of '(w)hether a plaintiff can ultimately establish its allegations is not part of the calculus' "]).

N&D moved to dismiss Audthan's anticipatory repudiation claim under CPLR 3211 (a) (1) and (7) which requires N&D to prove a defense "founded upon documentary evidence" and demonstrate Audthan's complaint failed to state a claim, respectively.  To succeed under CPLR 3211 (a) (1), N&D's "documentary evidence" must "utterly refute" Audthan's "factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).  Dismissal under CPLR 3211 (a) (7) is warranted only if Audthan "fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Connaughton v Chipotle Mexican Grill, Inc.,* 29 NY3d 137, 141 [2017]).  Given the current procedural posture, dismissal of Audthan's anticipatory repudiation claim was unwarranted.

" 'An anticipatory breach of contract by a promisor is a repudiation of [its] contractual duty before the time fixed in the contract for . . . performance has arrived' " (*Princes Point LLC v Muss Dev. L.L.C.*, 30 NY3d 127, 133 [2017], quoting 10-54 Corbin on Contracts § 54.1 [2017]; *see Wester v Casein Co. of Am.*, 206 NY 506, 514 [1912]; 13 Williston on Contracts § 39:37 [4th ed]).  Under the doctrine of anticipatory repudiation or anticipatory breach, "if one party to a contract repudiates [its] duties thereunder prior to the time designated for performance and before [it] has received all of the consideration due . . . thereunder, such repudiation entitles the nonrepudiating party to claim damages for total breach" (*Long Is. R.R. Co. v Northville Indus. Corp.*, 41 NY2d 455, 463 [1977]).  To constitute repudiation, "there must be some express and absolute refusal to perform" (*Ga Nun v Palmer*, 202 NY 483, 489 [1911]) that is "positive and unequivocal" (*Tenavision, Inc. v Neuman*, 45 NY2d 145, 150 [1978]; *see Princes Point LLC*, 30 NY3d at 133).

The first cause of action alleges N&D engaged in multiple acts that breached the ground lease agreement: a set of acts in refusing to sign the cure agreement tendered in 2015, and a 2021 statement that it would never sign any agreement.  Contrary to the conclusions of the courts below, a claim for breach and a claim for anticipatory repudiation can both be stated on these facts at the pleading stage.

According to the complaint, N&D's refusal to sign the 2015 PCA was based on a specific aspect of the agreement that N&D claimed was not compliant with the lease and therefore needed to be modified for N&D to execute the PCA—namely, Audthan's alleged failure to account for the court adjudicated rent-stabilized tenancies.  By comparison, the complaint alleged that N&D's 2021 letter to HPD was a blanket refusal to sign "any" cure

agreement. Under these circumstances, the complaint sufficiently alleges that N&D's refusal to sign the PCA in 2015 fell short of its contractual requirements without amounting to a total breach. Importantly, Audthan highlights, N&D's conduct in 2015 was not accompanied by any statement or indication that it would never perform its obligations with respect to the PCA, potentially making it, as the Appellate Division dissent claimed, "different in kind" from the 2021 letter, which the complaint alleges constituted a clear and unequivocal statement that N&D would never perform its obligations at any point (*Audthan LLC*, 211 AD3d at 423 [Rodriguez, J., dissenting]).

Taking the facts alleged in the complaint as true, which we must do at this stage of the proceeding, Audthan sufficiently demonstrated that N&D's 2021 statement was both a new development and a distinct "material breach that escalated, for the first time, to an unequivocal repudiation" (*id.* at 424). As Supreme Court held with regard to the alleged breaches occurring before 2021, questions of fact remain as to whether N&D's acts constituted breaches. That is also true as to the alleged 2021 breach. Ultimately, Audthan could lose its claim that N&D breached the contract before it refused to sign any agreement yet prevail on the alleged 2021 anticipatory repudiation claim. A plaintiff, of course, is permitted to plead in the alternative (*see* CPLR 3014, 3017). Accordingly, Audthan alleged a cognizable cause of action that N&D's 2021 statement was a repudiation of its core obligations under section 14.01 and the lower courts' dismissal of this claim was premature.

Turning to N&D's cross-appeal, the Appellate Division, relying on *Kalisch-Jarcho*, held that because Audthan's complaint sufficiently alleged bad faith, section 33.09—the

"sole remedy" cause in the lease—did not bar Audthan's claim for monetary damages based on N&D's refusal to sign the PCA (*see Audthan LLC*, 211 AD3d at 421). N&D argues that the Appellate Division's reliance on *Kalisch-Jarcho* was misplaced in light of our decision in *Matter of Part 60 Put-Back Litig.* (36 NY3d 342 [2020]), which explains the circumstances in which "sole remedy" provisions are enforceable. However, in response to Audthan's argument that a bad faith or malicious refusal would render section 33.09 unenforceable, N&D did not contend before Supreme Court that no such exception existed; rather, N&D instead argued only that such exception did not apply because N&D acted in its own economic self-interest and Audthan's allegations of bad faith were therefore insufficient to overcome the sole remedy provision. Supreme Court interpreted N&D's argument as conceding that bad faith conduct that is willful or undertaken with malice would render section 33.09 of the lease inapplicable. Although N&D now argues that our decision in *Matter of Part 60 Put-Back Litig.* sharply curtails the holding in *Kalisch-Jarcho* that invalidated some "sole remedy" provisions, the record below is devoid of any mention of *Matter of Part 60 Put-Back Litig.* or any argument that a bad-faith refusal would nevertheless be insulated by a sole remedy provision. That issue is therefore unpreserved for our review on this appeal. The argument N&D did advance—that its conduct was not undertaken in bad faith—cannot be resolved in N&D's favor on the pleadings taken in the light most favorable to Audthan.

IV.

We have reviewed the remaining arguments N&D advances for dismissal of other portions of the complaint and find them without merit.[6]  Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendant's motion to dismiss in part in accordance with this opinion, as so modified, affirmed, and certified question answered in the negative.

Order modified, without costs, by denying defendant's motion to dismiss in part in accordance with the opinion herein, as so modified, affirmed, and certified question answered in the negative. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur.

Decided April 25, 2024

---

[6] The parties now agree that N&D cured its previous violation of General Obligations Law § 7-103 (1) and therefore a determination of Audthan's fourth cause of action seeking return of its security deposit must await consideration of the underlying merits of the case.